## Game on National Forest Lands.

*Game laws— Preservation of game on national forest lands—Jurisdiction of Pennsylvania.*

1. The State of Pennsylvania has jurisdiction for the protection of wild life on national forest lands, except so far as its regulation is in conflict with the Acts of Congress.

2. Such jurisdiction may be superseded at any time by appropriate action of the Federal Government.

3. The Board of Game Commissioners of Pennsylvania has authority to enter into a co-operative agreement with the Secretary of Agriculture of the United States for the administration of the Pennsylvania game laws on national forest lands.

Department of Justice. Opinion to W. Gard Conklin, Chief, Bureau of Refuges and Lands, Board of Game Commissioners.

CARRINGER, Dep. Att'y-Gen., Dec. 17, 1926.—Your letter of Feb. 20, 1926, and the letters supplementary thereto, in reference to the establishment of game refuges on lands purchased by the National Government in this State have been referred to me for an opinion.

As I understand your inquiry, it raises the following questions:

1. Does the Commonwealth of Pennsylvania have full jurisdiction over game on lands owned by the National Government in Allegheny National Forest and in Tobyhanna National Forest?

2. Does the Board of Game Commissioners have authority to enter into a co-operative agreement with the Secretary of Agriculture of the United States for the purpose of regulating wild life within these forest areas?

On lands acquired by the United States under the Act of May 11, 1911, P. L. 271, and its amendments, and under the authority conferred upon the Secretary of Agriculture of the United States by the Weeks Law, the jurisdiction of Pennsylvania as to game and fish is superseded by the laws of the United States and the regulations of the United States Department of Agriculture. This position is fully supported by the opinion of Deputy Attorney-General Swope, given to Gifford Pinchot, Forestry Commissioner, Sept. 26, 1921. I have re-examined the questions there covered and concur in that opinion. This covers the situation as to Allegheny National Forest.

The effect of this situation would be that if the President of the United States "should establish a game preserve on lands acquired in Pennsylvania, the regulations of the Secretary of Agriculture respecting the game on such lands would supersede the laws of that State." (Opinion C. W. Boyle, Assistant Solicitor, May 9, 1922.)

Tobyhanna National Forest is established under the authority of section 9 of the Act of Congress approved June 7, 1924, 43 Stat. at L. 653, authorizing the establishment of national forests on lands within the boundary of Government reservations. This area would be administered by the Secretary of Agriculture of the United States under such rules and regulations and in accordance with such general plans as may be jointly approved by the Secretary of Agriculture and the Secretary of War. The War Department can take over the entire reservation and its control at any time for purposes of national defence. Aside from these considerations, there is nothing to prevent the Secretary of Agriculture from adopting the State Game and Fish Law as his regulation of game and fish on this reservation. The jurisdiction, however, is in the Federal authorities if they see fit to assume it, and not in Pennsylvania, except as such jurisdiction may be conceded to Pennsylvania by the policy of such Federal authorities.

While it is true that the laws of Pennsylvania as to game and fish on national forest lands are superseded by the laws of the United States, yet it appears to be the practice of the United States Department of Agriculture to recognize the existence of the State game laws and to co-operate with the State in the enforcement of these laws. It is stated in the National Forest Manual, under the title "Hunting and Fishing Trespass," that "prosecutions for game trespass are usually based on the violation of a state game law or more rarely Regulation T-7," which makes it possible to bring prosecution before the nearest United States Commissioner.

The provisions of the Grazing Manual as to game refuges recognize the jurisdiction of the State over State game refuges, and provide that State acts creating them "apply to all lands embraced within the prescribed area, including public lands of the United States, unless they conflict with the Acts of Congress." This manual also contains elaborate provisions for co-operation with the State in enforcing the State laws for protection of game. The authority of the Department of Agriculture to co-operate with the states for the protection of wild life on national forest lands is based on the Act of Congress of May 23, 1908, 35 Stat. at L. 251, which provides that: "Hereafter officials of the Forest Service designated by the Secretary of Agriculture shall in all ways that are practicable aid in the enforcement of the laws of the states and territories with regard to stock, for the prevention and extinguishment of forest fires and for the protection of fish and game."

It appears, therefore, that the national forest authorities, as a matter of practice, do recognize the jurisdiction of the State game laws over national forest lands and that the State does have jurisdiction for the protection of wild life on such lands, except so far as its regulation is in conflict with the Acts of Congress. This jurisdiction, however, may be superseded at any time by appropriate action of the Federal Government. The policy of co-operation seems to be firmly established, and for practical purposes may be regarded as permanent.

It remains to consider the second question. The Secretary of Agriculture has proposed a co-operative agreement, under which he adopts the game laws of Pennsylvania for the regulation of Tobyhanna National Forest and con-

stitutes the Board of Game Commissioners his agents for the enforcement of these laws.

The answer to this question must be found by an examination of the powers conferred upon these commissioners by the laws of Pennsylvania.

Section 815 of the Game Law provides: "The board may also, with and by the consent of the State Forestry Department or proper Federal authority, locate State game reserves on State Forest or National Forest."

Section 840 reads as follows: "The board may formulate, adopt and post such rules and regulations for the government of lands under its control, and for protection and propagation of game thereon, as it may deem necessary for their proper use and administration, or as may be established pursuant to agreements with the State Forest Commission or proper Federal authority or lessors. Such rules and regulations shall be the law of this Commonwealth controlling such lands, and a violation of any of the provisions of such rules and regulations shall subject the offender to the payment of fines provided for in this article for the violation of such rules and regulations."

Section 841 contains the following provision: "In connection with his official duties, it is lawful for any member or employee or duly appointed agent of the board or the Department of Forestry or the Federal Forest Service to go upon a game refuge at any time and in any manner, with or without firearms or traps or dogs."

These sections indicate that, at least as to game refuges, the legislature had directly within its contemplation some form of understanding and co-operation with the Federal authorities. Such an understanding would naturally take the form of an agreement which would make specific the things to be performed by the parties and would make a formal record of the understanding.

The Game Law grants no specific authority to the Board of Game Commissioners to enter into a general agreement with the Secretary of Agriculture for the enforcement of the game laws within a national forest. In section 209 it made the duty of the board "to protect, prosecute and preserve the game, fur-bearing animals and protected birds of the State, and to enforce, by proper action and proceedings, the laws of this Commonwealth relating to the same." The imposition of this duty carries with it a grant of power sufficient for the proper and complete performance of the duty imposed.

The proposed agreement requires the Board of Game Commissioners to enforce the Game Law of Pennsylvania within the limits of the national forests. This is exactly the duty imposed upon the board as to the whole State. Beyond a requirement that the board shall make a report to the Secretary of Agriculture as to the administration of the game laws in this area, the board assumes no duty which it does not already have as to the State at large. If the board is to establish refuges on or near national forest lands, it is essential that it should have control of the administration of the game laws, not only on the refuge itself, but on the adjoining lands. It seems fair to conclude, therefore, that the power to make such a co-operative agreement with the national forest authorities is essential to a proper and efficient performance by the Board of Game Commissioners of the duties imposed upon it by law.

I am of the opinion that the Board of Game Commissioners has authority to enter into a co-operative agreement with the Secretary of Agriculture for the administration of the Pennsylvania game laws on national forest lands, and I, therefore, answer the second question in the affirmative.

From C. P. Addams, Harrisburg, Pa.